

Joseph A. Grube, OSB # 96297
RICCI GRUBE BRENEMAN, PLLC
1200 Fifth Avenue, Suite 625
Seattle, WA 98101
Telephone: 206-624-5975
Facsimile: 206-260-7109
Email: joe@rgablaw.com



# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| PACCAR FINANCIAL CORP., a Washington Corporation<br><br>Plaintiff,<br><br>v.<br><br>ALTIMETER INC., d/b/a Altimeter Transport Services, an Oregon Corporation, ALICE NOTE, REX NOTE (a/k/a TONY NOTE), and MICHAEL NOTE,<br><br>Defendants. | CV'09 6371 AA<br><br>COMPLAINT FOR MONIES DUE<br><br>(BREACH OF CONTRACT |

COMES NOW Plaintiff, PACCAR FINANCIAL CORP., a Washington corporation, by and through its attorneys, and states and alleges for its Complaint:

COMPLAINT FOR MONIES DUE
PAGE 1 OF 5

# 30733

ORIGINAL

RICCI GRUBE BRENEMAN, PLLC
1200 FIFTH AVENUE, SUITE 625
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

## 1. PARTIES

1.1 The Plaintiff, PACCAR FINANCIAL CORP. ("PACCAR"), is a Washington corporation that does business in the State of Washington and maintains its principal place of business in Bellevue, King County, Washington.

1.2 Defendant Altimeter Inc., d/b/a "Altimeter Transport Services" ("ALTIMETER") is an Oregon corporation that does business in the State of Oregon and maintains its principal place of business at 90504 Hwy 99N, Eugene, Oregon.

1.3 Defendant Alice L. Note is an individual. On information and belief, Alice Note's last known usual abode and residence is 2679 Ridgemont Drive, Eugene, OR 97405.

1.4 Defendant Rex ("Tony") Note is an individual. On information and belief, Rex Note's last known usual abode and residence is 2679 Ridgemont Drive, Eugene, OR 97405.

1.5 Defendant Michael Note is an individual. On information and belief, Michael Note's last known usual abode and residence is 250 W 29th Avenue, Eugene, OR 97405.

1.6 Defendants Alice Note, Rex Note, and Michael Note are collectively referred to herein as "GUARANTORS" unless specifically identified.

## 2. JURISDICTION AND VENUE

2.1 This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are diverse, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

RICCI GRUBE BRENEMAN, PLLC
1200 FIFTH AVENUE, SUITE 625
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

2.1   This Court has both subject matter jurisdiction and personal jurisdiction in this action.

2.3   Venue in this District is proper in this Court pursuant to 28 U.S.C. § 1391 for reasons including that the Defendants have their principal place of business in Lane County, and the Defendants live in Lane County.

## 3. ALLEGATIONS

3.1   On or about November 25, 2005 and October 31, 2006 Defendant ALTIMETER, for good and valuable consideration, and plaintiff PACCAR executed two Equipment Lease Agreements (the "Lease Agreements"). In the Lease Agreements, the Defendant ALTIMETER agreed, among other things, to lease from PACCAR the property described in any Schedules to be executed by ALTIMETER and PACCAR. Copies of the Lease Agreements are attached to this Complaint as Exhibits A and B and by this reference incorporated herein.

3.2   Pursuant to the Lease Agreements, any Schedules executed by ALTIMETER and PACCAR will become an integral part of the Lease Agreement and will be governed by the terms of the Lease Agreement.

3.3   On or out November 25, 2005 and October 31, 2006, Alice Note, Rex Note, and Michael Note (the "GUARANTORS") executed Lease Guaranties wherein they agreed to guaranty to Plaintiff PACCAR the lease payments and other obligations of ALTIMETER. A copy of these Lease Guaranties are attached to this Complaint as Exhibits C and D and by this reference incorporated herein.

COMPLAINT FOR MONIES DUE
PAGE 3 OF 5

RICCI GRUBE BRENEMAN, PLLC
1200 FIFTH AVENUE, SUITE 625
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

3.4  ALTIMETER breached the Lease Agreements. On June 12, 2009 and June 15, 2009 PACCAR declared both Lease Agreements terminated.

3.5  The Lease Values as of the dates of termination of the lease due to default by Defendant ALTIMETER was $661,544.77.

3.6  Pursuant to the terms of the Lease Agreement, the various vehicles were sold for $357,700 in an attempt by Plaintiff PACCAR to recover the Lease Value. PACCAR incurred $5,297.52 in costs as a result of the sales. The amount of lease deficiency due to Plaintiff PACCAR by Defendant ALTIMETER and GUARANTORS is $309,102.69 (the "Lease Deficiency"), plus attorney fees and prejudgment interest.

3.7  Plaintiff PACCAR provided a Notice of Lease Deficiency to Defendants. Defendants have failed to pay the Lease Deficiency.

WHEREFORE, Plaintiff PACCAR prays for judgment against the Defendant as follows:

4.1  Entry of judgment against the Defendant in the amount of all indebtedness and amounts due Plaintiff PACCAR pursuant to the terms of the agreements between the parties, including, but not limited to, the Contracts between Plaintiff PACCAR and Defendants.

4.2  Award of attorneys' fees and interest pursuant to the terms of the Contract.

4.3  Entry of judgment awarding Plaintiff PACCAR all other damages suffered by Plaintiff PACCAR as a result of Defendants' breach of his agreements and contracts with PACCAR.

COMPLAINT FOR MONIES DUE
PAGE 4 OF 5

RICCI GRUBE BRENEMAN, PLLC
1200 FIFTH AVENUE, SUITE 625
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

4.4   For such other and further relief as this Court deems just and equitable.

DATED this 21st day of December, 2009.

>RICCI GRUBE BRENEMAN, PLLC
>
>_____
>Joseph A. Grube
>Oregon State Bar No. 96297
>Ricci Grube Breneman, PLLC
>1200 Fifth Avenue, Suite 625
>Seattle, WA 98101

COMPLAINT FOR MONIES DUE
PAGE 5 OF 5

RICCI GRUBE BRENEMAN, PLLC
1200 FIFTH AVENUE, SUITE 625
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607



**EQUIPMENT LEASE AGREEMENT**

LESSOR: PACCAR Financial Corp.
PO Box 1518
Bellevue, Washington 98009

LEASE Dated: November 25, 2005
LESSEE Name: Altimeter, Inc. dba Altimeter Transport Services
Place of Business: 90504 Hwy 99
Eugene, OR 97402
Mailing Address: Same as Above

## TERMS AND CONDITIONS

1. **LEASE:** The above-name Lessor hereby leases to the above named Lessee (including each and every Lessee jointly and severally if there are more than one Lessee) and Lessee hereby leases from Lessor, subject to the terms and conditions hereof and the terms and conditions of any Schedules executed by Lessee and Lessor which reference this Equipment Lease Agreement ("Agreement"), the personal property described in each such Schedule, together with all present and future attachments, accessories, replacement parts, additions (including bodies) and all proceeds thereof, collectively referred to as the "Equipment."

2. **EFFECTIVE DATE:** The terms and conditions hereof and the obligations and liabilities of Lessor and Lessee hereunder shall become effective on the date of Lessor's acceptance of this Agreement ("Effective Date"), even if no Equipment is specified in a Schedule at that time, or if Equipment is so specified but has not yet been delivered to and accepted by Lessee.

3. **SCHEDULES AND ACCEPTANCE CERTIFICATES:** The items of Equipment subject to this Agreement are those vehicles delivered to PACCAR Financial Corp. in accordance with the Sales Order attached to this Agreement as Attachment A. Each item of Equipment subject to this Agreement shall be described in a Schedule, in the form attached hereto. More than one item may be set forth on a Schedule, and more than one Schedule may be included under this Agreement. When Equipment is set forth on a Schedule signed by both Lessor and Lessee, such Schedule is an integral part of this Agreement and the rights and duties of Lessor and Lessee with regard to that Equipment are governed by this Agreement and such Schedule. In the event of any inconsistency between this Agreement and any Schedule, the terms of such Schedule shall control as to the Equipment listed on such Schedule. When Equipment is delivered to Lessee by Lessor, Lessee shall immediately inspect the Equipment for compliance with the requirements of this Agreement and the relevant Schedule. If the Equipment is acceptable to Lessee, Lessee shall sign and deliver to Lessor an Acceptance Certificate in the form attached hereto. However, if Lessee retains possession of the Equipment for more than 5 days for any reason, or if Lessee makes any use of the Equipment to any extent or for any reason, then the Equipment shall be deemed accepted for this Agreement as fully as if Lessee signed the Acceptance Certificate, even if a signed Certificate is not delivered to Lessor.

4. **LESSOR'S TITLE:** The Equipment is and shall at all times remain personal property. No right, title or interest in or to the Equipment shall pass to Lessee, except for Lessee's rights to possession, quiet enjoyment and use of the Equipment subject to the terms and conditions of this Agreement and for so long as Lessee is not in default of this Agreement. Title to the Equipment will at all times remain in Lessor's name and Lessee will at all times, at its own cost and expense, protect and defend the title of Lessor from and against all claims, liens, encumbrances and legal processes of creditors of Lessee or of others claiming by or through Lessee, and keep the Equipment free and clear from all such claims, liens, encumbrances and processes. Lessee acknowledges and agrees that Lessor is the owner of the Equipment for Federal income tax purposes.

5. **REGISTRATION AND OTHER FILINGS:** Each item of Equipment shall be registered and the certificate of ownership and/or the certificate of registration shall be issued with such person or persons as Lessor may designate shown as the legal owner, registered owner, first lien holder and/or the user or operator. Lessee acknowledges that the certificates of ownership and/or registration will be completed as required by applicable law and as required to protect Lessor's interests in the Equipment, and Lessee agrees that nothing contained on any such certificate shall expand or otherwise affect the rights of Lessee in the Equipment as set forth herein. Lessee shall be solely responsible for the costs and expenses associated with applying for and obtaining all such certificates. Lessee shall also be solely responsible for the costs and expenses of, and shall take whatever actions are necessary, to renew and maintain such certificates of ownership and registration and to avoid suspension or revocation of such certificates. In the event that a new certificate of ownership or registration is required, such certificates shall be obtained in the same manner and subject to the same requirements as set forth above. In the event that the Lessor deems it advisable at any time to prepare or file additional notices, filings or other documents (for example: UCC-1's or another form of financing statement) in order to protect its interests in and to the Equipment, Lessee shall cooperate fully with Lessor and shall sign each such document and hereby irrevocably consents to and authorizes Lessor to act as Lessee's attorney-in-fact to sign each and every such document in Lessee's name, place and stead, with as much force and effect as if Lessee had itself manually signed such document. Lessee will use the USDOT number issued to Lessee by the U.S. Department of Transportation for registration purposes.

6. **IDENTIFICATION OF EQUIPMENT AND RIGHT OF INSPECTION:** Upon Lessor's request, Lessee shall, at Lessee's own expense, permanently affix to the Equipment in a conspicuous place such labels, signs or other devices as Lessor may require to identify Lessor as the owner and Lessor of the Equipment. Lessor shall have the right to inspect the Equipment at all reasonable times and from time to time.

7. **DISCLAIMER OF WARRANTY AND LIMITATION OF LIABILITY:** Lessee acknowledges and agrees that each item of Equipment listed on any Schedule has been selected by Lessee for inclusion in this Agreement based solely upon Lessee's own judgment and without reliance upon any representations or warranties by Lessor. Lessor is not the designer, manufacturer, distributor or seller of the Equipment leased hereunder, and LESSOR MAKES NO REPRESENTATIONS AND SPECIFICALLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR INTENDED USE. LESSOR SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY, INDIRECTLY, INCIDENTALLY OR CONSEQUENTIALLY BY THE EQUIPMENT, BY ANY INADEQUACY THEREOF OR DEFECT OR DEFICIENCY THEREIN, OR BY ANY INCIDENT WHATSOEVER THEREWITH, WHETHER ARISING IN TORT, STRICT LIABILITY, NEGLIGENCE, CONTRACT OR OTHERWISE, OR IN ANY WAY RELATED TO OR ARISING FROM THIS AGREEMENT. During the term of the lease of each item of Equipment, Lessor hereby assigns to Lessee all of the rights and benefits of any warranties made by the manufacturer or seller of such Equipment, and Lessor further agrees to exercise for the benefit of Lessee any such rights and benefits which cannot be assigned.

8. **TERMS AND RENTALS:** The lease term ("Term") for each item of Equipment shall be as specified in the applicable Schedule. Lessee agrees to pay Lessor rental payments for each item of Equipment, including any advance rental payments ("Rental Payments"), in accordance with the payment schedule specified in such Schedule.

9. **SECURITY DEPOSIT:** The security deposit, if any, specified on each Schedule shall secure the full and faithful performance of all agreements, obligations and warranties of Lessee hereunder, including but not limited to, the agreement of Lessee to return the Equipment upon the expiration or earlier termination of the Term of this Agreement, in the condition herein specified. Such deposit shall not excuse the performance of any such agreements, obligations or warranties of Lessee or prevent a default in the event of a failure of Lessee to so perform. Lessor may (but need not) apply all or any part of such security deposit toward discharge of any overdue obligation of Lessee. To the extent any portion of such security deposit is so applied by Lessor, Lessee shall immediately restore the security deposit to its full amount. If upon the expiration of the Term with respect to all of the Equipment on any Schedule, Lessee shall have fully complied with all of its agreements, obligations and warranties hereunder (including its obligations with regard to Equipment listed on any other Schedules), the unused portion of any security deposit with respect to said Schedule will be refunded to Lessee. Lessor shall not be obligated to pay any interest on any such deposit.

10. **PLACE OF PAYMENT AND OBLIGATION TO PAY:** All Rental Payments are payable without notice or demand at Lessor's address or at such other address as Lessor may specify in writing from time to time. Unless otherwise specifically provided herein, Lessee's obligation to pay the Rental Payments and all other amounts due or to become due hereunder shall be absolute and unconditional under all circumstances, regardless of (a) any claim, counterclaim, set-off, recoupment, defense or other right which Lessee may have or claim to have for any reason against Lessor, the manufacturer or seller of the Equipment, or any third party, or (b) any interruption in or cessation of Lessee's use or possession of the Equipment for any reason whatsoever.

11. **DELINQUENCY CHARGES:** For each Rental Payment or other sum due hereunder which is not paid within ten (10) days after it is due, Lessee agrees to pay Lessor a delinquency charge calculated thereon at the greater of (a) the rate of one and one half percent (1 ½%) per month for the period of delinquency or (b) 5% of such Rental Payment or other sum due hereunder, provided that such delinquency charge shall not be in excess of the maximum amount permitted by law without creation of a defense or imposition of a penalty.

Page 1 of 4

CAT. NO. 4052 LDM (6-05)

EXHIBIT "A"



# EQUIPMENT LEASE AGREEMENT

12. **MODIFICATION OF EQUIPMENT AND ASSIGNMENT:** Lessee shall not modify, assign, transfer or sublet the Equipment, this Agreement or Lessee's interests hereunder without Lessor's prior written consent (which may be withheld in Lessor's reasonable discretion), nor shall Lessee's interests hereunder inure to the benefit of any trustee, receiver, creditor or successor of Lessee or of its property, whether or not in bankruptcy, by operation of law, or otherwise. This Agreement and all amounts due hereunder may be assigned at any time by Lessor without Lessee's consent. Upon notice of any assignment from Lessor or its assignee, Lessee shall make all payments coming due thereafter to the assignee without offset, counterclaim or defense of any kind. LESSEE FURTHER AGREES THAT LESSOR MAY, WITHOUT NOTICE TO OR CONSENT OF LESSEE, SELL OR GRANT A SECURITY INTEREST IN THE EQUIPMENT AND, IN SUCH EVENT, LESSEE'S RIGHTS IN AND TO THE EQUIPMENT SHALL BE SUBJECT AND SUBORDINATE TO THE INTEREST AND RIGHTS, INCLUDING THE RIGHT OF POSSESSION, OF ANY SUCH PURCHASER OR HOLDER OF A SECURITY INTEREST IN THE EQUIPMENT.

13. **LESSEE'S GENERAL DUTIES:** Lessee agrees, at its own cost and expense: (a) to use the Equipment in a careful and prudent manner in the regular course of Lessee's business and to permit only qualified personnel to use the Equipment, notifying each such person that he or she is not an employee of Lessor nor under Lessor's direction or control; (b) to comply with all applicable laws, rules and regulations relating to the possession, use or maintenance of the Equipment; (c) to comply with any published instructions, procedures or specifications of the manufacturer of the Equipment and of the party selling the Equipment to Lessor; (d) to comply with all of the terms and conditions of each and every insurance policy covering the Equipment; (e) to obtain any and all certificates, permits or licenses required or permitted by law with respect to the Equipment, subject to Lessor's instructions; and (f) to furnish Lessor promptly with any financial information or other information which Lessor may reasonably request from time to time.

14. **MAINTENANCE AND REPAIR:** Lessee shall, at its own cost and expense, keep the Equipment in good condition, repair and appearance and to comply with all of the manufacturer's recommended procedures in this regard. In addition, Lessee shall maintain the Equipment in compliance with all applicable federal, state and local safety, environmental and other rules and regulations. Lessee shall furnish, at its own expense, all necessary fuel, lubricants, grease, antifreeze, tires, tubes and all other replacement parts and supplies necessary for maintenance and lawful operation of the Equipment. Lessee shall not alter or modify the Equipment in any manner that adversely affects its value. All parts installed and any modifications and alterations made in the course of the ordinary maintenance and repair of the Equipment shall become the property of Lessor and shall remain the property of Lessor upon termination of this Agreement unless otherwise provided herein.

15. **INSURANCE:** Lessee agrees to keep the Equipment continuously insured against comprehensive and collision damage, and any other hazards Lessor may specify from time to time, by an insurance company and with a deductible approved by Lessor. The amount of insurance shall be the full insurable value of the Equipment or the full amount of all obligations arising under this Agreement, whichever is greater. Lessee shall also obtain from an insurance company approved by Lessor liability insurance with combined single limits of at least $1,000,000 per occurrence. If Lessee is using the Equipment to transport hazardous material, the insurance must include Environmental Restoration coverage in an amount not less than $5,000,000 per occurrence. Each insurance policy must provide, in a form acceptable to Lessor, that Lessor is an additional insured and the loss payee under the policy. If the Equipment is lost or damaged, any and all insurance proceeds shall be paid to Lessor, and Lessor may apply them as it chooses" either (i) to satisfy any obligation arising under this Agreement (whether or not due or otherwise matured), or (ii) to repair the Equipment. Each policy must provide that Lessor's interest therein shall not be invalidated by any acts, omissions or neglect of anyone other than Lessor, and that the policy can be canceled only after written notice of intention to cancel has been delivered to Lessor at least thirty (30) days before the cancellation date. Lessee shall deliver to Lessor proof of insurance coverage acceptable to Lessor. If Lessee obtains insurance from a company Lessor has not approved or fails to obtain any insurance, Lessor may (but is not required to) obtain any insurance Lessor desires to protect its interests, and Lessee shall immediately reimburse Lessor for the cost thereof. Lessee shall be solely liable for any losses which occur because no insurance has been obtained or the coverage of the insurance which has been obtained is incomplete, even if Lessor has reviewed the insurance coverage.

16. **TAXES:** On and after the Effective Date, Lessee agrees to pay promptly to the appropriate governmental agency or, upon Lessor's request, to Lessor, all taxes, assessments, levies, duties, and other governmental charges (including any penalties and interest and any fees for titling or registration) levied or assessed against Lessee, Lessor or the Equipment, upon or with respect to this Agreement or the purchase, use, operation, leasing, ownership, value, return or other disposition of the Equipment, or the rent, earnings or receipts arising therefrom, exclusive, however, of any taxes based on Lessor's net income and exclusive of any sales taxes paid by Lessor with respect to its initial purchase of the Equipment which have already been included in the cost of the Equipment under the applicable Schedule. If requested by Lessor, Lessee agrees to prepare on behalf of Lessor and in a form satisfactory to Lessor all requested tax returns and reports concerning the Equipment, to file such returns and reports with all appropriate governmental agencies on or before the due date therefore, and to mail a copy thereof to Lessor concurrently with such filing. Lessee further agrees to keep or cause to bekept and made available to Lessor any and all necessary records relevant to the use of the Equipment and pertaining to the aforesaid taxes, assessments and other governmental charges. The obligations arising under this Section shall survive payment of all other obligations under this Agreement and the termination of this Agreement.

17. **LOSS OR DESTRUCTION OF EQUIPMENT:** Lessee assumes the risk of direct and consequential loss and damage to the Equipment. Except as provided in this Section, no loss or damage to the Equipment or any part thereof shall release or impair any obligations of Lessee under this Lease. Furthermore while the Equipment is in transit and throughout the duration of the Lease including while the Equipment is in the possession of a third party, so long as Lessee has an insurable interest therein, Lessee agrees to assume the entire risk of the Equipment cost of any partial, complete or constructive loss with respect to the Equipment from any cause whatsoever including theft, loss, damage, destruction or governmental taking, whether or not such loss is covered by insurance or caused by any default or neglect of Lessee. Lessee agrees to give Lessor immediate notice of any damage to or loss of any Equipment. All physical damage insurance proceeds shall be payable directly to Lessor. If any of the Equipment is lost, destroyed, damaged beyond repair, or taken by governmental action, on the next succeeding rental payment date, Lessee will (1) either replace the Equipment with like-kind Equipment, free and clear of any liens or rights of other parties, acceptable to Lessor or Lessor's assignee and continue to pay all rentals without interruption as they come due, or (2) cause insurance carrier to promptly pay to Lessor the casualty value as shown in the Casualty and Termination Value Schedule ("Casualty Value") attached hereto, as of the date of payment thereof, plus all accrued and unpaid Rental Payments and other amounts than due and remaining unpaid. Following payment of any Casualty Value, and if no Event of Default has occurred and remains continuing, Lessor will then: (a) transfer to Lessee Lessor's rights to such Equipment "as is", "where is" and with all defects, without recourse and without representation or warranty, express or implied, other than a warranty that the Equipment is free and clear of any liens created by Lessor; and (b) remit to Lessee any physical damage insurance proceeds arising out of such loss up to the amount of the Casualty Value paid. Lessor shall determine in the exercise of its reasonable judgment whether the Equipment is damaged beyond repair. In the event of damage or loss, which does not result in damage beyond repair or a total loss of the Equipment or any item thereof, Lessee shall cause the affected Equipment to be restored to the condition required by the terms of the Lease. Upon completion of such repair and after supplying Lessor with satisfactory evidence thereof (and provided no Event of Default has occurred and remains continuing), Lessee shall be entitled to receive any insurance proceeds or other recovery to which Lessor would otherwise be entitled in connection with such loss up to the amount expended by Lessee in making the repair. Lessor shall not be obligated to undertake by litigation or otherwise the collection of any claim against any person for loss of, damage to, or government agency taking of the Equipment.

18. **RETURN TO LESSOR:** Upon the expiration of the Term for any Equipment, Lessee shall return, at Lessee's sole expense, such Equipment to Lessor at such place as is designated by Lessor at that time and in the same condition as when received by Lessee, except only reasonable wear and tear resulting from the normal and customary use thereof. However, if any Schedule to this Agreement contains specific requirements for the condition of the Equipment upon its return to Lessor the Equipment must satisfy such requirements. Lessee shall pay to Lessor on demand, as additional rental hereunder, the cost of any repairs necessary to place the Equipment in the condition required by this Agreement at that time.

19. **FAIR MARKET VALUE PURCHASE OPTION:** Provided Lessee shall have fully complied with all of the terms and conditions of this Agreement, the Lessee shall have the option at the end of the Term for each item of Equipment, to purchase such Equipment for its Fair Market Value on an "AS IS, WHERE IS" basis without any warranty by Lessor. This option must be exercised by written notice to the Lessor, not earlier than one hundred twenty (120) days prior to nor later than sixty (60) days prior to the end of the Term for each item of Equipment. The "Fair Market Value" shall be determined by mutual agreement of the Lessor and Lessee; provided that, if Lessor and Lessee are unable to agree upon the Fair Market Value of the Equipment within thirty (30) days after receipt by the Lessor of the Lessee's election to exercise the purchase option, the Fair Market Value shall be determined by an appraiser selected by the Lessor. Lessee acknowledges and agrees that the Lessor may select, as appraiser, the party that sold the Equipment to Lessor. The cost of such appraisal shall be borne by Lessee. If the purchase option set forth herein is exercised, the Fair Market Value purchase price shall be paid in full to Lessor at the end of the Term for such Equipment.

20. **TERMINAL RENTAL ADJUSTMENT CLAUSE OR MODIFIED TERMINAL RENTAL ADJUSTMENT CLAUSE:** If Lessee so elects by executing a Terminal Rental Adjustment Clause ("TRAC") Supplement or Modified Terminal Rental Adjustment Clause ("MOD-TRAC") Supplement in the form attached hereto with regard to one or more items of Equipment, then there shall be a terminal rental adjustment for such Equipment as further specified in such Supplement. If this Agreement is terminated with respect to any item of Equipment covered by a TRAC of MOD-TRAC Supplement for any reason other than expiration of the Term, then this Section shall not apply and Lessee's rights and obligations shall be governed by the other Sections hereof.

CAT. NO. 4052 LDM (6-05)

PACCAR FINANCIAL

# EQUIPMENT LEASE AGREEMENT

Case 6:09-cv-06371-AA   Document 1   Filed 12/23/09   Page 8 of 15

21. **PERFORMANCE OF OBLIGATIONS OF LESSEE BY LESSOR:** If Lessee fails to perform duly and promptly any of its obligations under this Agreement, Lessor may perform the same, but shall not be obligated to do so, to protect the interests of Lessor, Lessee or both, and any cost, liability or expense (including reasonable attorney's fees) incurred by Lessor in such performance shall be paid to Lessor by Lessee upon demand as additional rent for the Equipment.

22. **GENERAL INDEMNITY:** Lessee assumes liability for and agrees to indemnify, defend and hold Lessor, its agents, employees, successors and assigns harmless from any and all actions, suits, liabilities, obligations and claims of every nature (including, without limitation, those arising from contract, strict or absolute liability in tort, product liability, negligence, or any other cause) and from any and all damages, awards, penalties, fines, forfeitures, settlements, interest and attorney's fees awarded to any person whomsoever and regardless of the reason, which directly or indirectly results from or relates to the manufacture, delivery, purchase, sale, ownership, leasing, use, possession, operation, condition (including, without limitation, latent or other defects, whether or not discoverable), repossession, recovery, return, disablement or storage of the Equipment. The amount to be paid Lessor by Lessee hereunder shall include the amount, if any, necessary to reimburse Lessor for any taxes (including Federal income tax), which Lessor is required to pay in respect of the amounts received under this Section, the term Lessor interest, penalties and additions to tax. For the purposes of this Section, the term Lessor shall include the affiliated taxpayer group, within the meaning of Section 1504 of the Internal Revenue Code as amended ("Code") of which Lessor is a member. Lessee's indemnities and liabilities under this Section shall continue in full force and effect, notwithstanding the expiration or termination of this Agreement for any reason.

Upon request of Lessor, Lessee shall assume the defense of any and all demands, claims, actions, suits and all other proceedings against Lessor for which indemnity is provided herein and, Lessee shall allow, Lessor to participate in the defense thereof. At Lessor's option, Lessor may assume the defense of the matter, but this shall not relieve or reduce Lessee's obligations to indemnify Lessor as set forth herein.

23. **TAX INDEMNITY:** Lessee acknowledges that the Lessor is the owner of the Equipment for Federal income tax purposes and that Lessor intends to take the accelerated cost recovery deductions ("ACRS Deductions") as provided by Section 168 of the Code. Accordingly, Lessee agrees that at all times during the term of this Agreement, Lessee shall not take any action, fail to take any action, assert any claim or make any representation which results, or may result, in the loss to Lessor of ACRS Deductions. In the event that the ACRS Deductions are lost, reduced or delayed due to any act or omission by Lessee, Lessee agrees to promptly pay to Lessor, as additional rent, an amount such that the portion remaining after deduction of all taxes required to be paid by Lessor in respect to the receipt of such amount (including Federal income tax) shall fully compensate Lessor for the loss, reduction or delay of the ACRS Deductions, including any interest, penalties and additions to tax. Lessor shall have no obligation to contest, beyond the level of an Internal Revenue Service auditing agent, any receipture, disallowance, elimination, reduction or disqualification caused by any act or omission of the Lessee. Lessee also acknowledges that there is a possibility that, after the commencement of this Agreement, the Code, or any regulations promulgated thereunder, might be amended or changed so as to deprive Lessor of the right to claim all or part of the ACRS Deductions, or to lengthen the time period over which the Equipment must be depreciated. In some other manner impair Lessor's after-tax margin with respect to this Agreement ("Tax Benefits"). In the event that Lessor's Tax Benefits are impaired due to an amendment or change to the Code, or any regulations promulgated thereunder, the Lessee agrees to pay the Lessor an adjusted rent over the remaining term of the lease such that the Lessor's after-tax margin (after consideration of all taxes, including Federal income tax, and increased costs) with respect to this Agreement is maintained. Lessor shall have no obligation to contest any impairment of Tax Benefits due to an amendment or change to the Code or any regulations promulgated thereunder. For the purposes of this Section, the term Lessor shall include the affiliated taxpayer group, within the meaning of Section 1504 of the Code, of which Lessee is a member. Lessee's indemnities and liabilities under this Section shall continue in full force and effect notwithstanding the expiration or termination of this Agreement for any reason.

Lessee acknowledges that the percentages set forth in the Casualty and Termination Schedules attached hereto have been computed on the assumption that Lessor shall be entitled to the Tax Benefits as allowed under the present Code. Accordingly, in the event Lessee becomes obligated to pay additional sums to Lessor, the percentages set forth in the schedules shall be revised as may be necessary in the reasonable opinion of Lessor so that the amount payable by Lessee in the event of a casualty loss or termination shall be sufficient to maintain Lessor's net after-tax margin at the same level that would have been available to the Lessor upon payment of the Casualty Value or Termination Value had the Tax Benefits been allowed in the manner permitted under the present Code. The revised schedule shall be utilized to calculate any payment of Casualty Value or Termination Value paid after the liability of Lessee hereunder shall become fixed regardless of the date of such occurrence. Further, with respect to any previous payment of Casualty Value or Termination Value under the lease by the Lessee, the Lessee shall pay to owner the additional amount, in excess of the amount actually paid, that the Lessee would have been required to pay had the liability of Lessee become fixed prior to the date of the original payment.

24. **DEFAULT:** Time is of the essence under this Agreement and the occurrence of any of the following events shall be deemed a default hereunder or under any Schedule to the extent that any such default is not cured within ten (10) days of the event of default (each, an Event of Default: (a) Lessee's failure to pay when due the full amount of any payments required hereunder, including, without limitation, rents or additional rents, deficiency and late charges, interest, taxes, insurance, the costs of maintenance or repairs, amounts due for indemnification, the Casualty or Termination Values (if applicable) or any other amounts; (b) Lessee's failure to perform any action or other obligation required by the terms hereof to be performed by Lessee; (c) any attempt by Lessee to remove, sell, transfer, sublease, encumber, or otherwise transfer, dispose of or part with possession of the Equipment without Lessor's prior written consent; (d) the Lessee admits to making a fraudulent statement or it is determined by a judicial or administrative proceeding the Lessee has made a fraudulent statement or statements to induce the Lessor to extend credit in connection with this Agreement; (e) Lessee's death, dissolution, or other termination of existence, (f) Lessee's becoming insolvent, or becoming the subject of a petition in bankruptcy, either voluntarily or involuntarily, or Lessee's making an assignment of a receiver, or being named or subjected to a suit for the appointment of a receiver for the benefit of creditors, or being named or subjected to the benefit of creditors, or being named or subjected to seizure of a levy upon any Equipment leased hereunder by reason of any legal or governmental process directed against Lessee.

25. **TERMINATION VALUE:** Lessor and Lessee hereby agrees that the amount set forth under the appropriate entry of the termination value section of the Casualty and Termination Value Schedule attached hereto ("Termination Value") represents the amount necessary to compensate Lessor for any breach by Lessee of its obligation to make future Rental Payments under this Agreement with regard to the items of Equipment shown on such Schedule, in the event of Lessee's breach of its Rental Payment obligation, Lessee agrees to pay Lessor the Termination Value (determined by reference to the most recent Rental Payment date shown thereon) as liquidated damages and not as a penalty. The Termination Value does not include, and Lessee shall remain liable for and shall immediately pay to Lessor, all other amounts due under this Agreement (except for the future Rental Payments), including but not limited to past due Rental Payments, deficiency and late charges, taxes, insurance, costs of maintenance and repair, and any amounts due under the indemnification provisions thereof.

26. **REMEDIES:** In the event of any default by Lessee under this Agreement, Lessor shall have all of the rights and remedies permitted at law and in equity. The rights and remedies available to Lessor may vary with the law of the applicable jurisdiction, and Lessee acknowledges and agrees that Lessor shall be entitled to exercise any and all available rights and remedies in any combination or sequence not expressly prohibited by law. Lessee hereby agrees and consents to any rights or remedies which are available to Lessor: if Lessee has so agreed or consented. Unless prohibited by applicable law, Lessor's available rights and remedies in the event of a default by Lessee include, without limitation: (a) without terminating this Agreement, request Lessee to assemble any or all of the Equipment, to make the same available to Lessor at a reasonable place designated by Lessor, and to put Lessor in possession thereof; (b) without terminating this Agreement, immediately and without legal proceedings or notice to Lessee enter Lessee's premises, take possession of, remove and retain any or all of the Equipment or render the same unusable; (c) without terminating this Agreement, declare the Termination Value and all other sums payable hereunder immediately due and payable; (d) without notice to Lessee, terminate the Agreement as to any or all of the Equipment leased hereunder, but such termination shall not release Lessee from the liabilities and obligations arising from such breach; and (e) sell or otherwise dispose of any or all of the Equipment at private or public sale, or re-lease any or all of the same on such terms and conditions as Lessor deems appropriate. In the event that Lessor repossesses, re-leases, sells or otherwise disposes of the Equipment, any net proceeds of such action which are attributable to Lessee's interest in the Equipment under this Agreement shall be applied against Lessee's obligations hereunder. Unless otherwise required by applicable law, any remaining net proceeds shall belong solely to Lessor. Lessee shall be liable for any amounts due to Lessor hereunder after application of the net proceeds as set forth above. The net proceeds shall be determined by deducting from the gross sales proceeds, or from the net present value of the proceeds of a re-lease, any applicable sales, use and excise taxes, and sales or other fees or commissions actually paid by or party (including the party who sold the Equipment to Lessor) who helps Lessor sell or otherwise dispose of the Equipment, and Lessor's expenses of locating, repossessing, repairing, preparing and disposing of the Equipment, including attorney's fees.

Lessee hereby expressly waives any rights it may have for damages or injuries suffered by Lessee at the time of repossession may be taken and held without liability until its Equipment after default and all claims it may have for damages or injuries suffered through or loss caused by any repossession, sale or other disposition of the Equipment hereunder. Lessee agrees that any property other than Equipment which is in or upon the Equipment, at the time of repossession may be taken and held without liability until its return is requested by Lessee. Lessee hereby acknowledges and agrees that any applicable standard of commercial reasonableness will be satisfied if the Lessor sells or otherwise disposes of the Equipment by any method which is customarily used for similar Equipment, or which Lessor has used or would use for similar Equipment owned solely by Lessor, even if Lessee believes or proves that a different method of disposition would have been more beneficial for Lessee. Unless otherwise required by law, any

CAT. NO. 4052 LDM (6-05)    Page 3 of 4



# EQUIPMENT LEASE AGREEMENT

requirement of reasonable notice regarding the re-lease, sale or other disposition of the Equipment which Lessor may be obligated to give will be met if such notice is mailed to Lessee at its address shown herein at least ten (10) days before the time of such re-lease, sale or other disposition. Nothing herein contained shall require Lessor to re-lease, sell or otherwise dispose of the Equipment.

27. **NOTICES:** All notices relating hereto shall be either delivered in person to an officer of Lessor or Lessee, or be sent by certified mail, return receipt requested, to Lessor or Lessee at its address as shown on the face hereof or to the last known address of the recipient.

28. **LIMITATIONS ON USE:** The Equipment shall not be used in the transportation of radioactive materials, hazardous wastes, explosives, hazardous materials, gasses or liquids, unless Lessor has expressly approved the transportation of such material in writing.

29. **MISCELLANEOUS:** This Agreement constitutes the entire understanding of the parties and supersedes any and all prior understandings or agreements, oral or written between and among the parties respecting the within subject matter. This Agreement shall be binding upon the successors, assigns and legal representatives of the parties hereto. This Agreement may not be modified unless in a writing signed by both parties. No provision of the Agreement may be waived unless in a writing signed by the party to be bound by the waiver, and the waiver of any default shall not be or be deemed to be a waiver of any other or subsequent default. The provisions of this Agreement are severable, and if a court of competent jurisdiction determines that any of them are unenforceable in accordance with their terms, the court may modify, sever or divide such provisions as necessary to enforce those provisions to the extent they may be found to be reasonable and to enforce all remaining provisions. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and such counterparts shall together constitute but one agreement. In the event of litigation concerning this Agreement, the prevailing party shall be entitled to recover its costs and expenses, including reasonable attorney's fees.

**ALL TERMS AND CONDITIONS OF THIS AGREEMENT ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

LESSEE ACKNOWLEDGES THAT LESSEE HAS RECEIVED A TRUE COPY OF THIS AGREEMENT, LESSEE HAS READ IT AND IT WAS COMPLETELY FILLED IN BEFORE LESSEE SIGNED IT.

| ACCEPTED BY: PACCAR Financial Corp. | LESSEE: Altimeter, Inc. dba Altimeter Transport Services |
|---|---|
| | SOCIAL SECURITY NUMBER / TAX ID: |
| BY: *K. M. Simoneau* <br> Kathy Simoneau | BY: *Alice Note* <br> Alice Note |
| TITLE: Area Administration Manager | TITLE: President |
| ADDRESS: 10604 NE 38th Place, Suite 215 <br> Kirkland, WA 98033 | ADDRESS: 90504 Hwy 99 <br> Eugene, OR 97402 |
| DATE: November 25, 2005 | DATE: November 25, 2005 |

CAT. NO. 4052 LDM (6-05)


**PACCAR FINANCIAL**

# EQUIPMENT LEASE AGREEMENT

LESSOR: PACCAR Financial Corp.
PO Box 1518
Bellevue, Washington 98009

LEASE Dated: October 31, 2006
LESSEE Name: Altimeter, Inc. dba Altimeter Transport Services
Place of Business: 90504 Hwy 99
Eugene, OR 97402
Mailing Address: Same as Above

## TERMS AND CONDITIONS

1. **LEASE:** The above-name Lessor hereby leases to the above named Lessee (including each and every Lessee jointly and severally if there are more than one Lessee) and Lessee hereby leases from Lessor, subject to the terms and conditions hereof and the terms and conditions of any Schedules executed by Lessee and Lessor which reference this Equipment Lease Agreement ("Agreement"), the personal property described in each such Schedule, together with all present and future attachments, accessories, replacement parts, additions (including bodies) and all proceeds thereof, collectively referred to as the "Equipment."

2. **EFFECTIVE DATE:** The terms and conditions hereof and the obligations and liabilities of Lessor and Lessee hereunder shall become effective on the date of Lessor's acceptance of this Agreement ("Effective Date"), even if no Equipment is specified in a Schedule at that time, or if Equipment is so specified but has not yet been delivered to and accepted by Lessee.

3. **SCHEDULES AND ACCEPTANCE CERTIFICATES:** The items of Equipment subject to this Agreement are those vehicles delivered to PACCAR Financial Corp. in accordance with the Sales Order attached to this Agreement as Attachment A. Each item of Equipment subject to this Agreement shall be described in a Schedule, in the form attached hereto. More than one item may be set forth on a Schedule, and more than one Schedule may be included under this Agreement. When Equipment is set forth on a Schedule signed by both Lessor and Lessee, such Schedule is an integral part of this Agreement and the rights and duties of Lessor and Lessee with regard to that Equipment are governed by this Agreement and such Schedule. In the event of any inconsistency between this Agreement and any Schedule, the terms of such Schedule shall control as to the Equipment listed on such Schedule. When Equipment is delivered to Lessee by Lessor, Lessee shall immediately inspect the Equipment for compliance with the requirements of this Agreement and the relevant Schedule. If the Equipment is acceptable to Lessee, Lessee shall sign and deliver to Lessor an Acceptance Certificate in the form attached hereto. However, if Lessee retains possession of the Equipment for more than 5 days for any reason, or if Lessee makes any use of the Equipment to any extent or for any reason, then the Equipment shall be deemed accepted for this Agreement as fully as if Lessee signed the Acceptance Certificate, even if a signed Certificate is not delivered to Lessor.

4. **LESSOR'S TITLE:** The Equipment is and shall at all times remain personal property. No right, title or interest in or to the Equipment shall pass to Lessee, except for Lessee's rights to possession, quiet enjoyment and use of the Equipment subject to the terms and conditions of this Agreement and for so long as Lessee is not in default of this Agreement. Title to the Equipment will at all times remain in Lessor's name and Lessee will at all times, at its own cost and expense, protect and defend the title of Lessor from and against all claims, liens, encumbrances and legal processes of creditors of Lessee or of others claiming by or through Lessee, and keep the Equipment free and clear from all such claims, liens, encumbrances and processes. Lessee acknowledges and agrees that Lessor is the owner of the Equipment for Federal income tax purposes.

5. **REGISTRATION AND OTHER FILINGS:** Each item of Equipment shall be registered and the certificate of ownership and/or the certificate of registration shall be issued with such person or persons as Lessor may designate shown as the legal owner, registered owner, first lien holder and/or the user or operator. Lessee acknowledges that the certificates of ownership and/or registration will be completed as required by applicable law and as required to protect Lessor's interests in the Equipment, and Lessee agrees that nothing contained on any such certificate shall expand or otherwise affect the rights of Lessee in the Equipment as set forth herein. Lessee shall be solely responsible for the costs and expenses associated with applying for and obtaining all such certificates. Lessee shall also be solely responsible for the costs and expenses of, and shall take whatever actions are necessary, to renew and maintain such certificates of ownership and registration and to avoid suspension or revocation of such certificates. In the event that a new certificate of ownership or registration is required, such certificates shall be obtained in the same manner and subject to the same requirements as set forth above. In the event that the Lessor deems it advisable at any time to prepare or file additional notices, filings or other documents (for example: UCC-1's or another form of financing statement) in order to protect its interests in and to the Equipment, Lessee shall cooperate fully with Lessor and shall sign each such document and hereby irrevocably consents to and authorizes Lessor to act as Lessee's attorney-in-fact to sign each and every such document in Lessee's name, place and stead, with as much force and effect as if Lessee had itself manually signed such document. Lessee will use the USDOT number issued to Lessee by the U.S. Department of Transportation for registration purposes.

6. **IDENTIFICATION OF EQUIPMENT AND RIGHT OF INSPECTION:** Upon Lessor's request, Lessee shall, at Lessee's own expense, permanently affix to the Equipment in a conspicuous place such labels, signs or other devices as Lessor may require to identify Lessor as the owner and Lessor of the Equipment. Lessor shall have the right to inspect the Equipment at all reasonable times and from time to time.

7. **DISCLAIMER OF WARRANTY AND LIMITATION OF LIABILITY:** Lessee acknowledges and agrees that each item of Equipment listed on any Schedule has been selected by Lessee for inclusion in this Agreement based solely upon Lessee's own judgment and without reliance upon any representations or warranties by Lessor. Lessor is not the designer, manufacturer, distributor or seller of the Equipment leased hereunder, and LESSOR MAKES NO REPRESENTATIONS AND SPECIFICALLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR INTENDED USE. LESSOR SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY, INDIRECTLY, INCIDENTALLY OR CONSEQUENTIALLY BY THE EQUIPMENT, BY ANY INADEQUACY THEREOF OR DEFECT OR DEFICIENCY THEREIN, OR BY ANY INCIDENT WHATSOEVER THEREWITH, WHETHER ARISING IN TORT, STRICT LIABILITY, NEGLIGENCE, CONTRACT OR OTHERWISE, OR IN ANY WAY RELATED TO OR ARISING FROM THIS AGREEMENT. During the term of the lease of each item of Equipment, Lessor hereby assigns to Lessee all of the rights and benefits of any warranties made by the manufacturer or seller of such Equipment, and Lessor further agrees to exercise for the benefit of Lessee any such rights and benefits which cannot be assigned.

8. **TERMS AND RENTALS:** The lease term ("Term") for each item of Equipment shall be as specified in the applicable Schedule. Lessee agrees to pay Lessor rental payments for each item of Equipment, including any advance rental payments ("Rental Payments"), in accordance with the payment schedule specified in such Schedule.

9. **SECURITY DEPOSIT:** The security deposit, if any, specified on each Schedule shall secure the full and faithful performance of all agreements, obligations and warranties of Lessee hereunder, including but not limited to, the agreement of Lessee to return the Equipment upon the expiration or earlier termination of the Term of this Agreement, in the condition herein specified. Such deposit shall not excuse the performance of any such agreements, obligations or warranties of Lessee, or prevent a default in the event of a failure of Lessee to so perform. Lessor may (but need not) apply all or any part of such security deposit toward discharge of any overdue obligation of Lessee. To the extent any portion of such security deposit is so applied by Lessor, Lessee shall immediately restore the security deposit to its full amount. If upon the expiration of the Term with respect to all of the Equipment on any Schedule, Lessee shall have fully complied with all of its agreements, obligations and warranties hereunder (including its obligations with regard to Equipment listed on any other Schedules), the unused portion of any security deposit with respect to said Schedule will be refunded to Lessee. Lessor shall not be obligated to pay any interest on any such deposit.

10. **PLACE OF PAYMENT AND OBLIGATION TO PAY:** All Rental Payments are payable without notice or demand at Lessor's address as set forth herein or at such other address as Lessor may specify in writing from time to time. Unless otherwise specifically provided herein, Lessee's obligation to pay the Rental Payments and all other amounts due or to become due hereunder shall be absolute and unconditional under all circumstances, regardless of (a) any claim, counterclaim, set-off, recoupment, defense or other right which Lessee may have or claim to have for any reason against Lessor, the manufacturer or seller of the Equipment, or any third party, or (b) any interruption in or cessation of Lessee's use or possession of the Equipment for any reason whatsoever.

11. **DELINQUENCY CHARGES:** For each Rental Payment or other sum due hereunder which is not paid within ten (10) days after it is due, Lessee agrees to pay Lessor a delinquency charge calculated thereon at the greater of (a) the rate of one and one half percent (1 ½%) per month for the period of delinquency or (b) 5% of such Rental Payment or other sum due hereunder, provided that such delinquency charge shall not be in excess of the maximum amount permitted by law without creation of a defense or imposition of a penalty.

Page 1 of 4

EXHIBIT "B"



# EQUIPMENT LEASE AGREEMENT

12. **MODIFICATION OF EQUIPMENT AND ASSIGNMENT:** Lessee shall not modify, assign, transfer or sublet the Equipment, this Agreement or Lessee's interests hereunder without Lessor's prior written consent (which may be withheld in Lessor's reasonable discretion), nor shall Lessee's interests hereunder inure to the benefit of any trustee, receiver, creditor or successor of Lessee or of its property, whether or not in bankruptcy, by operation of law, or otherwise. This Agreement and all amounts due hereunder may be assigned at any time by Lessor without Lessee's consent. Upon notice of any assignment from Lessor to its assignee, Lessee shall make all payments coming due thereafter to the assignee without offset, counterclaim or defense of any kind. LESSEE FURTHER AGREES THAT LESSOR MAY, WITHOUT NOTICE TO OR CONSENT OF LESSEE, SELL OR GRANT A SECURITY INTEREST IN THE EQUIPMENT AND, IN SUCH EVENT, LESSEE'S RIGHTS IN AND TO THE EQUIPMENT SHALL BE SUBJECT AND SUBORDINATE TO THE INTEREST AND RIGHTS, INCLUDING THE RIGHT OF POSSESSION, OF ANY SUCH PURCHASER OR HOLDER OF A SECURITY INTEREST IN THE EQUIPMENT.

13. **LESSEE'S GENERAL DUTIES:** Lessee agrees, at its own cost and expense: (a) to use the Equipment in a careful and prudent manner in the regular course of Lessee's business and to permit only qualified personnel to use the Equipment, notifying each such person that he or she is not an employee of Lessor nor under Lessor's direction or control; (b) to comply with all applicable laws, rules and regulations relating to the possession, use or maintenance of the Equipment; (c) to comply with any published instructions, procedures or specifications of the manufacturer of the Equipment and of the party selling the Equipment to Lessor; (d) to comply with all of the terms and conditions of each and every insurance policy covering the Equipment; (e) to obtain any and all certificates, permits or licenses required or permitted by law with respect to the Equipment, subject to Lessor's instructions; and (f) to furnish Lessor promptly with any financial information or other information which Lessor may reasonably request from time to time.

14. **MAINTENANCE AND REPAIR:** Lessee shall, at its own cost and expense, keep the Equipment in good condition, repair and appearance and to comply with all of the manufacturer's recommended procedures in this regard. In addition, Lessee shall maintain the Equipment in compliance with all applicable federal, state and local safety, environmental and other rules and regulations. Lessee shall furnish, at its own expense, all necessary fuel, lubricants, grease, antifreeze, tires, tubes and all other replacement parts and supplies necessary for maintenance and lawful operation of the Equipment. Lessee shall not alter or modify the Equipment in any manner that adversely affects its value. All parts installed and any modifications and alterations made in the course of the ordinary maintenance and repair of the Equipment shall become the property of Lessor and shall remain the property of Lessor upon termination of this Agreement unless otherwise provided herein.

15. **INSURANCE:** Lessee agrees to keep the Equipment continuously insured against comprehensive and collision damage, and any other hazards Lessor may specify from time to time, by an insurance company and with a deductible approved by Lessor. The amount of insurance shall be the full insurable value of the Equipment or the full amount of all obligations arising under this Agreement, whichever is greater. The insurance policy must provide in a form acceptable to Lessor, that Lessor is a loss payee under the policy. Lessee shall also obtain automobile liability coverage from an insurance company approved by Lessor, with an AM Best rating of A- or better. The policy shall provide the limits of liability the lessee is required to carry by the Federal Department of Transportation ("DOT") or the governing State Department of Transportation if the Lessee is not subject to regulation under the DOT or $1,000,000, whichever is greater. Territory limitations, commodity restrictions or driver exclusions to the policy are not allowed. The policy must provide, in a form acceptable to Lessor, that Lessor is an additional insured under the policy. If the Lessee is required to carry $5,000,000 limits of liability, the automobile liability insurance must include pollution liability coverage within these limits. The terms of the pollution liability coverage must be substantially in the form of those provided by Insurance Services Office Form CA 9948 and the policy must include an MCS 90 filing. Lessee shall be solely responsible for any deductibles or self insured retentions under the policies of insurance required under this provision. If the Equipment is lost or damaged, any and all insurance proceeds shall be paid to Lessor, and Lessor may apply them as it chooses either (i) to satisfy any obligation arising under this Agreement (whether or not due or otherwise matured), or (ii) to repair the Equipment. Each policy must provide that Lessor's interest therein shall not be invalidated by any acts, omissions or neglect of anyone other than Lessor, and that the policy can be canceled only after written notice of intention to cancel has been delivered to Lessor at least thirty (30) days before the cancellation date. Lessee shall deliver to Lessor proof of insurance coverage acceptable to Lessor. If Lessee obtains insurance from a company Lessor has not approved or fails to obtain any insurance, Lessor may (but is not required to) obtain any insurance Lessor desires to protect its interests, and Lessee shall immediately reimburse Lessor for the cost thereof. Lessee shall be solely liable for any losses which occur because no insurance has been obtained or the coverage of the insurance which has been obtained is incomplete, even if Lessor has reviewed the insurance coverage.

16. **TAXES:** On and after the Effective Date, Lessee agrees to pay promptly to the appropriate governmental agency or, upon Lessor's request, to Lessor, all taxes, assessments, levies, duties, and other governmental charges (including any penalties and interest and any fees for titling or registration) levied or assessed against Lessee, Lessor or the Equipment, upon or with respect to this Agreement or the purchase, use, operation, leasing, ownership, value, return or other disposition of the Equipment, or the rent, earnings or receipts arising therefrom, exclusive, however, of any taxes based on Lessor's net income and exclusive of any sales taxes paid by Lessor with respect to its initial purchase of the Equipment which have already been included in the cost of the Equipment under the applicable Schedule. If requested by Lessor, Lessee agrees to prepare on behalf of Lessor and in a form satisfactory to Lessor all requested tax returns and reports concerning the Equipment, to file such returns and reports with all appropriate governmental agencies on or before the due date therefore, and to mail a copy thereof to Lessor concurrently with such filing. Lessee further agrees to keep or cause to be kept and made available to Lessor any and all necessary records relevant to the use of the Equipment and pertaining to the aforesaid taxes, assessments and other governmental charges. The obligations arising under this Section shall survive payment of all other obligations under this Agreement and the termination of this Agreement.

17. **LOSS OR DESTRUCTION OF EQUIPMENT:** Lessee assumes the risk of direct and consequential loss and damage to the Equipment. Except as provided in this Section, no loss or damage to the Equipment or any part thereof shall release or impair any obligations of Lessee under this Lease. Furthermore while the Equipment is in transit and throughout the duration of the Lease including while the Equipment is in the possession of a third party, so long as Lessee has an insurable interest therein, Lessee agrees to assume the entire risk of the Equipment cost of any partial, complete or constructive loss with respect to the Equipment from any cause whatsoever including theft, loss, damage, destruction or governmental taking, whether or not such loss is covered by insurance or caused by any default or neglect of Lessee. Lessee agrees to give Lessor immediate notice of any damage to or loss of any Equipment. All physical damage insurance proceeds shall be payable directly to Lessor. If any of the Equipment is lost, destroyed, damaged beyond repair, or taken by governmental action, on the next succeeding rental payment date, Lessee will (1) either replace the Equipment with like-kind Equipment, free and clear of any liens or rights of other parties, acceptable to Lessor or Lessor's assignee and continue to pay all rentals without interruption as they come due, or (2) cause insurance carrier to promptly pay to Lessor the casualty value as shown in the Casualty and Termination Value Schedule ("Casualty Value") attached hereto, as of the date of payment thereof, plus all accrued and unpaid Rental Payments and other amounts then due and remaining unpaid. Following payment of any Casualty Value, and if no Event of Default has occurred and remains continuing, Lessor will then: (a) transfer to Lessee Lessor's rights to such Equipment "as is", "where is" and with all defects, without recourse and without representation or warranty, express or implied, other than a warranty that the Equipment is free and clear of any liens created by Lessor; and (b) remit to Lessee any physical damage insurance proceeds arising out of such loss up to the amount of the Casualty Value paid. Lessor shall determine in the exercise of its reasonable judgment whether the Equipment is damaged beyond repair. In the event of damage or loss, which does not result in damage beyond repair or a total loss of the Equipment or any item thereof, Lessee shall cause the affected Equipment to be restored to the condition required by the terms of the Lease. Upon completion of such repair and, after supplying Lessor with satisfactory evidence thereof (and provided no Event of Default has occurred and remains continuing), Lessee shall be entitled to receive any insurance proceeds or other recovery to which Lessor would otherwise be entitled in connection with such loss up to the amount expended by Lessee in making the repair. Lessor shall not be obligated to undertake by litigation or otherwise the collection of any claim against any person for loss of, damage to, or government agency taking of the Equipment.

18. **RETURN TO LESSOR:** Upon the expiration of the Term for any Equipment, Lessee shall return, at Lessee's sole expense, such Equipment to Lessor at such place as is designated by Lessor at that time and in the same condition as when received by Lessee, except only reasonable wear and tear resulting from the normal and customary use thereof. However, if any Schedule to this Agreement contains specific requirements for the condition of the Equipment upon its return to Lessor the Equipment must satisfy such requirements. Lessee shall pay to Lessor on demand, as additional rental hereunder, the cost of any repairs necessary to place the Equipment in the condition required by this Agreement at that time.

19. **FAIR MARKET VALUE PURCHASE OPTION:** Provided Lessee shall have fully complied with all of the terms and conditions of this Agreement, the Lessee shall have the option at the end of the Term for each item of Equipment, to purchase such Equipment for its Fair Market Value on an "AS IS, WHERE IS" basis without any warranty by Lessor. This option must be exercised by written notice to the Lessor, not earlier than one hundred twenty (120) days prior to nor later than sixty (60) days prior to the end of the Term for each item of Equipment. The "Fair Market Value" shall be determined by mutual agreement of the Lessor and Lessee; provided that, if Lessor and Lessee are unable to agree upon the Fair Market Value of the Equipment within thirty (30) days after receipt by the Lessor of the Lessee's election to exercise the purchase option, the Fair Market Value shall be determined by an appraiser selected by the Lessor. Lessee acknowledges and agrees that the Lessor may select, as appraiser, the party that sold the Equipment to Lessor. The cost of such appraisal shall be borne by Lessee. If the purchase option set forth herein is exercised, the Fair Market Value purchase price shall be paid in full to Lessor at the end of the Term for such Equipment.



20. **TERMINAL RENTAL ADJUSTMENT CLAUSE OR MODIFIED TERMINAL RENTAL ADJUSTMENT CLAUSE:** If Lessee so elects by executing a Terminal Rental Adjustment Clause ("TRAC") Supplement or Modified Terminal Rental Adjustment Clause ("MOD-TRAC") Supplement in the form attached hereto with regard to one or more items of Equipment, then there shall be a terminal rental adjustment for such Equipment as further specified in such Supplement. If this Agreement is terminated with respect to any item of Equipment covered by a TRAC or MOD-TRAC Supplement for any reason other than expiration of the Term, then this Section shall not apply and Lessee's rights and obligations shall be governed by the other Sections hereof.

21. **PERFORMANCE OF OBLIGATIONS OF LESSEE BY LESSOR:** If Lessee fails to perform duly and promptly any of its obligations under this Agreement, Lessor may perform the same, but shall not be obligated to do so, to protect the interests of Lessor, Lessee or both, and any cost, liability or expense (including reasonable attorney's fees) incurred by Lessor in such performance shall be paid to Lessor by Lessee upon demand as additional rent for the Equipment.

22. **GENERAL INDEMNITY:** Lessee assumes liability for and agrees to indemnify, defend and hold Lessor, its agents, employees, successors and assigns harmless from any and all actions, suits, liabilities, obligations and claims of every nature (including, without limitation, those arising from contract, strict or absolute liability in tort, product liability, negligence, or any other cause) and from any and all damages, awards, penalties, fines, forfeitures, settlements, interest and attorney's fees awarded to any person whomsoever and regardless of the reason, which directly or indirectly results from or relates to the manufacture, delivery, purchase, sale, ownership, leasing, use, possession, operation, condition (including, without limitation, latent or other defects, whether or not discoverable), repossession, recovery, return, disablement or storage of the Equipment. The amount to be paid Lessor by Lessee hereunder shall include the amount, if any, necessary to reimburse Lessor for any taxes (including Federal income tax), which Lessor is required to pay in respect of the amounts received under this Section, including any interest, penalties and additions to tax. For the purposes of this Section, the term Lessor shall include the affiliated taxpayer group, within the meaning of Section 1504 of the Internal Revenue Code as amended ("Code") of which Lessor is a member. Lessee's indemnities and liabilities under this Section shall continue in full force and effect, notwithstanding the expiration or termination of this Agreement for any reason.

Upon request of Lessor, Lessee shall assume the defense of any and all demands, claims, actions, suits and all other proceedings against Lessor for which indemnity is provided herein and, Lessee shall allow Lessor to participate in the defense thereof. At Lessor's option, Lessor may assume the defense of the matter, but this shall not relieve or reduce Lessee's obligations to indemnify Lessor as set forth herein.

23. **TAX INDEMNITY:** Lessee acknowledges that the Lessor is the owner of the Equipment for Federal income tax purposes and that Lessor intends to take the accelerated cost recovery deductions ("ACRS Deductions") as provided by Section 168 of the Code. Accordingly, Lessee agrees that at all times during the term of this Agreement, Lessee shall not take any action, fail to take any action, assert any claim or make any representation which results, or may result, in the loss to Lessor of ACRS Deductions. In the event that the ACRS Deductions are lost, reduced or delayed due to any act or omission by Lessee, Lessee agrees to promptly pay to Lessor, as additional rent, an amount such that the portion remaining after deduction of all taxes required to be paid by Lessor in respect to the receipt of such amount (including Federal income tax) shall fully compensate Lessor for the loss, reduction or delay of the ACRS Deductions, including any interest, penalties and additions to tax. Lessor shall have no obligation to contest, beyond the level of an Internal Revenue Service auditing agent, any recapture, disallowance, elimination, reduction or disqualification caused by any act or omission of the Lessee. Lessee also acknowledges that there is a possibility that, after the commencement of this Agreement, the Code, or any regulations promulgated thereunder, might be amended or changed so as to deprive Lessor of the right to claim all or part of the ACRS Deductions, or to lengthen the time period over which the Equipment must be depreciated, or in some other manner impair Lessor's after-tax margin with respect to this Agreement ("Tax Benefits"). In the event that the Lessor's Tax Benefits are impaired due to an amendment or change to the Code, or any regulations promulgated thereunder, the Lessee agrees to pay the Lessor an adjusted rent over the remaining term of the lease such that Lessor's after-tax margin (after consideration of all taxes, including Federal income tax, and increased costs) with respect to this Agreement is maintained. Lessor shall have no obligation to contest any impairment of Tax Benefits due to an amendment or change to the Code or any regulations promulgated thereunder. For the purposes of this Section, the term Lessor shall include the affiliated taxpayer group, within the meaning of Section 1504 of the Code, of which Lessor is a member. Lessee's indemnities and liabilities under this Section shall continue in full force and effect notwithstanding the expiration or termination of this Agreement for any reason.

Lessee acknowledges that the percentages set forth in the Casualty and Termination Schedules attached hereto have been computed on the assumption that Lessor shall be entitled to the Tax Benefits as allowed under the present Code. Accordingly, in the event Lessee becomes obligated to pay additional sums to Lessor, the percentages set forth in the schedules shall be revised as may be necessary in the reasonable opinion of Lessor so that the amount payable by Lessee in the event of a casualty loss or termination shall be sufficient to maintain Lessor's net after-tax margin at the same level that would have been available to the Lessor upon payment of the Casualty Value or Termination Value had the Tax Benefits been allowed in the manner permitted under the present Code. The revised schedule shall be utilized to calculate any payment of Casualty Value or Termination Value paid after the liability of Lessee hereunder shall become fixed regardless of the date of such casualty or other occurrence. Further, with respect to any previous payment of Casualty Value or Termination Value under the lease by the Lessee, the Lessee shall pay to owner the additional amount, in excess of the amount actually paid, that the Lessee would have been required to pay had the liability of Lessee become fixed prior to the date of the original payment.

24. **DEFAULT:** Time is of the essence under this Agreement and the occurrence of any of the following events shall be deemed a default hereunder or under any Schedule to the extent that any such default is not cured within ten (10) days of the event of default (each, an Event of Default): (a) Lessee's failure to pay when due the full amount of any payments required hereunder, including, without limitation, rents or additional rents, delinquency and late charges, interest, taxes, insurance, the costs of maintenance or repairs, amounts due for indemnification, the Casualty or Termination Values (if applicable) or any other amounts; (b) Lessee's failure to perform any action or other obligation required by the terms hereof to be performed by Lessee; (c) any attempt by Lessee to remove, sell, transfer, sublease, encumber, or otherwise transfer, dispose or part with possession of the Equipment without Lessor's prior written consent; (d) the Lessee admits to making a fraudulent statement or it is determined by a judicial or administrative proceeding the Lessee has made a fraudulent statement or statements to induce the Lessor to extend credit in connection with this Agreement; (e) Lessee's death, dissolution, or other termination of existence; (f) Lessee's becoming insolvent or becoming the subject of a petition in bankruptcy, either voluntarily or involuntarily, or Lessee's making an assignment for the benefit of creditors, or being named or subjected to a suit for the appointment of a receiver; (g) seizure of or levy upon any Equipment leased hereunder by reason of any legal or governmental process directed against Lessee.

25. **TERMINATION VALUE:** Lessor and Lessee hereby agree that the amount set forth under the appropriate entry of the termination value section of the Casualty and Termination Value Schedule attached hereto ("Termination Value") represents the amount necessary to compensate Lessor for any breach by Lessee of its obligation to make future Rental Payments under this Agreement with regard to the items of Equipment shown on such Schedule. In the event of Lessee's breach of its Rental Payment obligation, Lessee agrees to pay Lessor the Termination Value (determined by reference to the most recent Rental Payment date shown thereon) as liquidated damages and not as a penalty. The Termination Value does not include, and Lessee shall remain liable for and shall immediately pay to Lessor, all other amounts due under this Agreement (except for the future Rental Payments), including but not limited to past due Rental Payments, delinquency and late charges, taxes, insurance, costs of maintenance and repair, and any amounts due under the indemnification provisions hereof.

26. **REMEDIES:** In the event of any default by Lessee under this Agreement, Lessor shall have all of the rights and remedies permitted at law and in equity. The rights and remedies available to Lessor may vary with the law of the applicable jurisdiction, and Lessee acknowledges and agrees that Lessor shall be entitled to exercise any and all available rights and remedies in any combination or sequence not expressly prohibited by law. Lessee hereby agrees and consents to any rights or remedies which are available to Lessor if Lessee has so agreed or consented. Unless prohibited by applicable law, Lessor's available rights and remedies in the event of a default by Lessee include, without limitation: (a) without terminating this Agreement, request Lessee to assemble any or all of the Equipment, to make the same available to Lessor at a reasonable place designated by Lessor, and to put Lessor in possession thereof; (b) without terminating this Agreement, immediately and without legal proceedings or notice to Lessee enter Lessee's premises, take possession of, remove and retain any or all of the Equipment or render the same unusable; (c) without terminating this Agreement, declare the Termination Value and all other sums payable hereunder immediately due and payable; (d) without notice to Lessee, terminate the Agreement as to any or all of the Equipment leased hereunder, but such termination shall not release Lessee from the liabilities and obligations arising from such breach; and (e) sell or otherwise dispose of any or all of the Equipment at private or public sale, or re-lease any or all of the same on such terms and conditions as Lessor deems appropriate. In the event that Lessor repossesses, re-leases, sells or otherwise disposes of the Equipment, any net proceeds of such action which are attributable to Lessee's interest in the Equipment under this Agreement shall be applied against Lessee's obligations hereunder. Unless otherwise required by applicable law, any remaining net proceeds shall belong solely to Lessor. Lesse shall be liable for any amounts due to Lessor hereunder after application of the net proceeds as set forth above. The net proceeds shall be determined by deducting from the gross sales proceeds, or from the net present value of the proceeds of a re-lease, any applicable sales, use and excise taxes, and sales or other fees or commissions actually paid to any party (including the party who sold the Equipment to Lessor) who helps Lessor sell or otherwise dispose of the Equipment, and Lessor's expenses of locating, repossessing, repairing, preparing and disposing of the Equipment, including attorney's fees.

Lessee hereby expressly waives any rights it may have to possession of the Equipment after default and all claims it may have for damages or injuries suffered through or loss caused by any repossession, sale or other disposition of the Equipment hereunder. Lessee agrees that any property other than Equipment which is in or upon the Equipment at the time of repossession may be taken and held without liability until its return is requested by Lessee. Lessee hereby acknowledges and agrees that any



# EQUIPMENT LEASE AGREEMENT

applicable standard of commercial reasonableness will be satisfied if the Lessor sells or otherwise disposes of the Equipment by any method which is customarily used for similar Equipment, or which Lessor has used or would use for similar Equipment owned solely by Lessor, even if Lessee believes or proves that a different method of disposition would have been more beneficial for Lessee. Unless otherwise required by law, any requirement of reasonable notice regarding the re-lease, sale or other disposition of the Equipment which Lessor may be obligated to give will be met if such notice is mailed to Lessee at its address shown herein at least ten (10) days before the time of such re-lease, sale or other disposition. Nothing herein contained shall require Lessor to re-lease, sell or otherwise dispose of the Equipment.

27. NOTICES: All notices relating hereto shall be either delivered in person to an officer of Lessor or Lessee, or be sent by certified mail, return receipt requested, to Lessor or Lessee at its address as shown on the face hereof or to the last known address of the recipient.

28. LIMITATIONS ON USE: The Equipment shall not be used in the transportation of radioactive materials, hazardous wastes, explosives, hazardous materials, gasses or liquids, unless Lessor has expressly approved the transportation of such material in writing.

29. MISCELLANEOUS: This Agreement constitutes the entire understanding of the parties and supersedes any and all prior understandings or agreements, oral or written between and among the parties respecting the within subject matter. This Agreement shall be binding upon the successors, assigns and legal representatives of the parties hereto. This Agreement may not be modified unless in a writing signed by both parties. No provision of the Agreement may be waived unless in a writing signed by the party to be bound by the waiver, and the waiver of any default shall not be or be deemed to be a waiver of any other or subsequent default. The provisions of this Agreement are severable, and if a court of competent jurisdiction determines that any of them are unenforceable in accordance with their terms, the court may modify, sever or divide such provisions as necessary to enforce those provisions to the extent they may be found to be reasonable and to enforce all remaining provisions. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and such counterparts shall together constitute but one agreement. In the event of litigation concerning this Agreement, the prevailing party shall be entitled to recover its costs and expenses, including reasonable attorney's fees.

**ALL TERMS AND CONDITIONS OF THIS AGREEMENT ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

LESSEE ACKNOWLEDGES THAT LESSEE HAS RECEIVED A TRUE COPY OF THIS AGREEMENT, LESSEE HAS READ IT AND IT WAS COMPLETELY FILLED IN BEFORE LESSEE SIGNED IT.

| ACCEPTED BY: PACCAR Financial Corp. | LESSEE: Altimeter, Inc. dba Altimeter Transport Services |
|---|---|
| | SOCIAL SECURITY NUMBER / TAX ID: |
| BY: *K. M. Simoneau* <br> Kathy Simoneau | BY: *Alice Note* <br> Alice Note |
| TITLE: Area Administration Manager | TITLE: President |
| ADDRESS: 10604 NE 38th Place, Suite 215 <br> Kirkland, WA 98033 | ADDRESS: 90504 Hwy 99 <br> Eugene, OR 97402 |
| DATE: October 31, 2006 | DATE: October 31, 2006 |

CAT. NO. 4052 LDM (6-05)



# LEASE GUARANTY

Reference is made to the Equipment Lease Agreement ("Agreement") dated November 25, 2005 between PACCAR Financial Corp. ("Lessor") and Altimeter, Inc. dba Altimeter Transport Services ("Lessee").

In order to induce Lessor to enter into the Agreement, and for other valuable consideration the receipt and sufficiency of which is hereby acknowledged, Guarantor (and if more than one, each of the undersigned Guarantors jointly and severally) hereby unconditionally and irrevocably guarantees to Lessor and its assigns that, regardless of the enforceability of the Agreement or of any other circumstance which might affect the liability of Lessee or of Guarantor: (i) all of Lessee's payment and other obligations under the Agreement ("Obligations") will be performed or paid in full in accordance with the terms of the Agreement, and (ii) in case of any extension of time of payment or other change, amendment or modification of the Obligations, they will be performed or paid in full in accordance with the terms of such extension, change, amendment or modification. In the event that any of the Obligations are not performed or paid in full when due for whatever reason, including Lessee's bankruptcy, insolvency or receivership or a discharge of release of the Obligations in a bankruptcy or other judicial proceeding, Guarantor will pay such amount immediately upon notice from Lessor, regardless of whether Lessor has proceeded against Lessee or the Equipment (as defined in the Agreement). Guarantor hereby waives notice of and consents to any and all changes, amendments, modifications, extensions of time of payment, renewals, releases of Equipment or any other indulgency from time to time granted to Lessee in respect of any or all of the Obligations. Guarantor hereby waives notice of acceptance, notice of presentment, demand of payment, notice of protest, notice of sale or other disposition and notice of release or other handling of the Equipment, and all other notices and demands whatsoever respecting the Obligations or the Equipment. This Guaranty shall bind the Guarantor and the Guarantor's heirs, successors and assigns. This Guaranty shall be automatically reinstated if for any reason any payment or performance in respect of the Obligations shall be rescinded or must otherwise be restored or returned, whether as a result of proceedings in bankruptcy or otherwise. Any of the undersigned Guarantors, if more than one, and any other party liable in respect of the Obligations may be released without affecting the liability of any undersigned Guarantor or Guarantors not so released. Lessor may assign this Guaranty, and if it does, the assignee shall have the same rights and remedies as if originally named herein in place of Lessor. Guarantor hereby irrevocably waives and renounces any right or claim Guarantor would otherwise have against Lessee, whether by way of indemnification, subrogation, exoneration, right of reimbursement, contribution or otherwise, as a consequence of Guarantor's making any payment under this Guarantee.

\*\*\*This Guaranty covers Five (5) 2006 Kenworth T2000 VINS 148718-148722. Guarantor's liability hereunder is limited to Twenty-five (25%) percent of the Casualty and Termination Value.\*\*\*

Dated this twenty-fifth day of November, 2005.

**Corporate Guarantor**
**Roberts Motor Co**

By: Vitz Ramsdell
Title: President

| Tax ID | Address | Phone |
|---|---|---|
| ▮ | 550 NE Columbia Blvd<br>Portland, OR 97211 | 503-240-6282 |

## CERTIFICATE

I, the undersigned, hereby certify that I am the duly elected, qualified, and acting Secretary and keeper of the corporate records and seal of Roberts Motor Co (the "Corporation"), a corporation organized and in good standing under the laws of _____ and further certify as follows:

(1) That the following is a true and complete copy of certain resolutions duly adopted at a meeting of the Board of Directors of the Corporation held on _____, 20____ at which a quorum was present and voting throughout, which resolutions remain in full force and effect without modification and do not contravene or conflict with the By-laws, Articles of Incorporation, or any contractual undertaking of the Corporation:

"RESOLVED, that the Guaranty by this corporation of the obligations of Altimeter, Inc. dba Altimeter Transport Services to PACCAR Financial Corp. and its successors and assigns under a lease agreement executed or to be executed between the aforementioned parties and any assignment thereof be, and it hereby is, authorized or ratified, as the case may be; and be it"

"FURTHER RESOLVED, that the authority of Vitz Ramsdell the President of this corporation, to execute and deliver any instrument evidencing the aforementioned Guaranty be, and it hereby is, conferred or ratified, as the case may be."

(2) That the person whose name appears above is the duly elected or appointed officer or employee of the Corporation holding the office or title indicated.

WITNESS my hand of the Corporation affixed this twenty-fifth day of November, 2005.

_____
(Secretary)

CAT. NO. 4054a LDM

EXHIBIT "C"



RECEIVED
NOV 0 9 2006
IN MEANS

**LEASE GUARANTY**

Reference is made to the Equipment Lease Agreement ("Agreement") dated October 31, 2006 between PACCAR Financial Corp. ("Lessor") and Altimeter, Inc. dba Altimeter Transport Services ("Lessee").

In order to induce Lessor to enter into the Agreement, and for other valuable consideration the receipt and sufficiency of which is hereby acknowledged, Guarantor (and if more than one, each of the undersigned Guarantors jointly and severally) hereby unconditionally and irrevocably guarantees to Lessor and its assigns that, regardless of the enforceability of the Agreement or of any other circumstance which might affect the liability of Lessee or of Guarantor: (i) all of Lessee's payment and other obligations under the Agreement ("Obligations") will be performed or paid in full in accordance with the terms of the Agreement, and (ii) in case of any extension of time of payment or other change, amendment or modification of the Obligations, they will be performed or paid in full in accordance with the terms of such extension, change, amendment or modification. In the event that any of the Obligations are not performed or paid in full when due for whatever reason, including Lessee's bankruptcy, insolvency or receivership or a discharge of release of the Obligations in a bankruptcy or other judicial proceeding, Guarantor will pay such amount immediately upon notice from Lessor, regardless of whether Lessor has proceeded against Lessee or the Equipment (as defined in the Agreement). Guarantor hereby waives notice of and consents to any and all changes, amendments, modifications, extensions of time of payment, renewals, releases of Equipment or any other indulgency from time to time granted to Lessee in respect of any or all of the Obligations. Guarantor hereby waives notice of acceptance, notice of presentment, demand of payment, notice of protest, notice of sale or other disposition and notice of release or other handling of the Equipment, and all other notices and demands whatsoever respecting the Obligations or the Equipment. This Guaranty shall bind the Guarantor and the Guarantor's heirs, successors and assigns. This Guaranty shall be automatically reinstated if for any reason any payment or performance in respect of the Obligations shall be rescinded or must otherwise be restored or returned, whether as a result of proceedings in bankruptcy or otherwise. Any of the undersigned Guarantors, if more than one, and any other party liable in respect of the Obligations may be released without affecting the liability of any undersigned Guarantor or Guarantors not so released. Lessor may assign this Guaranty, and if it does, the assignee shall have the same rights and remedies as if originally named herein in place of Lessor. Guarantor hereby irrevocably waives and renounces any right or claim Guarantor would otherwise have against Lessee, whether by way of indemnification, subrogation, exoneration, right of reimbursement, contribution or otherwise, as a consequence of Guarantor's making any payment under this Guarantee.

Dated this thirty-first day of October, 2006.

**Individual Guarantors**

_____
Rex A. Note

_____
Alice L. Note

_____
Michael S. Note

| | SocSecurityNo | Address | Phone |
|---|---|---|---|
| | | 2679 Ridgemont Drive<br>Eugene, OR 97402 | (541) 913-7256 |
| | | 2679 Ridgemont Drive<br>Eugene, OR 97402 | (541) 913-7256 |
| | | 250 W 29th<br>Eugene, OR 97405 | (541) 913-7256 |

CAT. NO. 4054b LDM

EXHIBIT "D"